Jonathan **KLAUCKE**, Plaintiff

v.

Brian C. **DALY**, Defendant.

**C.A. No. 07–30155–MAP.**

United States District Court, D. Massachusetts.

Jan. 13, 2009.

Bruce D. Colegrove, Attorney at Law, Montague, MA, for Plaintiff.

Carole Sakowski, Lynch Morrison Mahoney LLP, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT* (Dkt. No. 15)

PONSOR, District Judge.

Around 9 p.m. on the evening of Saturday May 5, 2007 ("Cinco de Mayo," a popular undergraduate holiday), Plaintiff Jonathan Klaucke and four friends were walking from Plaintiff's residence to a party on Meadow Street in Amherst, Massachusetts. The Meadow Street area, near the University of Massachusetts, had been for some time the scene of significant criminal activity associated with underage drinking, including property damage, assaults, and even sexual assaults. A few days earlier, the Amherst Police Department had distributed leaflets and held seminars to educate and inform residents and students that officers would be patrolling the area and asking for identification from individuals who appeared to be underage and in possession of alcohol.

Plaintiff himself was 21 years old, the lowest legal age to possess alcohol, and had an unusually youthful appearance even for his age. Three of the other four individuals in the group with him were openly carrying alcohol (two twelve-packs and a large bottle of "Smuttynose" beer). Plaintiff himself was carrying a Whole Foods grocery bag with what appeared to be alcohol inside.[1]

Defendant Officer Brian C. Daly of the Amherst Police Department and his fellow officer, Todd Lang, patrolling on motorcycles, noticed the group. Based upon the neighborhood, the time of day, the holiday atmosphere, the youthful appearance of the individuals, and the open possession of alcohol by three of them, the officers approached Plaintiff and the four others and asked for identification. The objective circumstances clearly provided reasonable suspicion of possible underage possession of alcohol in violation of Mass. Gen. Laws. ch. 138, § 34C. Pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the officers were justified in making the approach.

In response to the officers' request for identification, all five members of the group except Plaintiff produced licenses confirming that they were at least 21 years old. As soon as the officers were able to confirm that Plaintiff's friends were of age, they returned the licences and no further relevant interaction occurred.

Plaintiff alone refused to produce his license. This behavior, in the officers'

---

1. In fact, it is undisputed that the bag did contain six loose cans of beer.

eyes, could only be explained by the fact that Plaintiff was either underage or had some other reason, such as an outstanding warrant, for refusing the officers' request. When confronted with Plaintiff's refusal to produce identification, Defendant Daly either implied, or explicitly stated, that he might put Plaintiff under arrest for being a minor in possession of alcohol and that he would thereafter be required to produce identification during the booking process.

In the face of this implicit or explicit threat of arrest, Plaintiff produced his driver's license, which confirmed that he was, in fact, 21 years old. The officer took the license for a period of no more than four minutes in order to call it in to check to see if there were any outstanding warrants associated with it; when no warrants were located, he returned the license to Plaintiff and Plaintiff went on his way. The entire incident from start to finish took no more than eight minutes and probably less.

Plaintiff thereafter sued officer Daly pursuant to 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, §§ 11H and 11I,[2] alleging that the request for identification, the implied or explicit threat of arrest when Plaintiff refused the request, and the brief retention of Plaintiff's license to check for warrants violated his civil rights. Defendant moved for summary judgment, Dkt. No. 15, arguing that the undisputed facts could not support any claim of violation of any federal or state Constitutional provision and that, even if some violation were found, Defendant was entitled to qualified immunity.

Counsel appeared for argument on the motion on January 8, 2009, and, following argument, the court indicated that it would be allowing the Motion for Summary Judgment. The court's reasoning was set forth in detail orally following the argument and may be summarized as follows.

■ As noted, Defendant had reasonable suspicion based upon the objective facts to approach the group of young people. In making this determination, the court does not rely solely on the nature of the area in which the individuals were walking, or upon the time of day and particular holiday, though these factors are properly relevant to the court's decision. Of more importance is the fact that the individuals, especially Plaintiff, were of young appearance and three of the five were openly carrying alcoholic beverages. The facts, taken as a whole, fully support the officers' decision to approach the group and make inquiry under *Terry*.

Having requested identification, no Constitutional line was crossed when Officer Daly indicated that a refusal to provide identification might well result in Plaintiff's arrest. The Supreme Court has stated that the "threat of criminal sanction" is not improper in the context of a request for identity that is refused during a lawful *Terry* stop. *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 188, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004).

Moreover, on the facts of this case, the officer was entirely correct that the refusal to provide identification might very well generate, in combination with the other circumstances, probable cause to permit the officer to place Plaintiff under arrest for being in possession of alcohol illegally. In sum, Defendant's remark to Plaintiff that if he continued to refuse to provide

---

**2.** The complaint actually refers to "M.G.L. c. 12 §§ 11H–1." This appears to be a typographical error. Section 11H may also be mis-cited, since that statute authorizes the state Attorney General to bring civil rights suits on behalf of the Commonwealth of Massachusetts.

identification, he might well find himself required to provide it during the booking process, crossed no Constitutional line.

Plaintiff's final argument, that Defendant had no right to retain the license briefly while he checked for warrants, is similarly unavailing. Plaintiff's inexplicable refusal to provide identification under the circumstances justified this brief retention of the license to check for an outstanding warrant.

Even assuming that the actions of Defendant in some way violated Plaintiff's Constitutional rights (which they did not), Defendant would be entitled to qualified immunity. Put differently, the "rights" Plaintiff attempts to invoke in this lawsuit certainly were not clearly established as of the date of the incident. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In this instance, the state of the law did not give Defendant "fair warning that his conduct was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

For the foregoing reasons, set forth in more detail orally following argument on January 8, 2009, Defendant's Motion for Summary Judgment, Dkt. No. 15, is hereby ALLOWED as to all of Plaintiff's claims. The clerk is ordered to enter judgment for Defendant. This case may now be closed.

It is So Ordered.